UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOANN HOWARD                                    *              CIVIL ACTION: 17-7142

                                                *

VERSUS                                          *              SECTION: "F" (3)

                                                *

ST. JOHNS THE BAPTIST PARISH PUBLIC SCHOOL DISTRICT

KENDRIA SPEARS in her capacity

As Principal for St. John The Baptist Public School District

PAGE ESCHETTE, in her capacity as

Director of Human Resources for St. John The Baptist Parish Public School District

KEVIN GEORGE, in his capacity as Superintendent for St. John The Baptist Parish

Public School District

*******************************************************************************

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION
## TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel comes Plaintiff, Joann Howard who

submits this supplemental memorandum in opposition to Defendant's Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For reasons more

specifically stated below, Defendants' motion should be denied as there are genuine issue of

material fact which remains in dispute.  As a matter of law, the requested relief should be denied.

### I.      FACTUAL BACKGROUND

Plaintiff, Joann Howard, filed an opposition to Defendants' Motion for Summary

Judgment on October 9, 2018.  The matter was set for hearing on October 17, 2018.  This

Honorable court took the matter under advisement and the parties advised the court that Page

Eschette, a named defendant was scheduled to be deposed on October 23, 2018.  The court further ordered Plaintiff to supplement her response no later than October 30, 2018.  Ms. Eschette was deposed on the October 23, 2018 and the substance of her testimony forms the basis for Plaintiff's supplemental response.

## II.  SUPPLEMENTAL ARGUMENT

Page Eschette, testified that during all relevant times regarding Plaintiff's claims, she was employed by St. John the Baptist School District. (See Exh.1, Eschette Deposition)  Defendant Page Eschette is a white female who was previously employed and served as the director of human resources for the school district during the academic school year of 2013-2016.  Ms. Eschette testified that her duties ranged from recruiting teachers, disciplining employees, advertisement and approving job descriptions. She also worked at as liaison with the district's union for the board.  To use her words she was the "gatekeeper" and as such, she was responsible for all employee matters including staffing, policy matters, discipline and ultimately, termination.

### A.  GENUNIE ISSUES OF MATERIAL FACT REMAIN IN DISPUTE REGARDING PLAINSTIFF'S CLAIM OF DISPARATE TREATMENT.

After recently deposing defendant, George, who served as the superintendant for the district and Spears, the principal and direct supervisor of Plaintiff, it is clear that genuine issues remain in dispute regarding the discriminatory treatment and violation of the American with Disabilities Act (ADA) regarding that Plaintiff's tenure with the St. John the Baptist School District.

Plaintiff has previously established that she has sufficiently pled facts which establish a prima facia case of racial discrimination.   Ms. Eschette testified that she was initially made

aware of Plaintiff's request for leave regarding job related stress, at some point during the summer of 2014. Eschette acknowledged that Plaintiff initially provided her with a statement, requesting a sabbatical medical leave from Plaintiff's primary care physician, Dr. Acuri. She noted that according to board policy, a second opinion was needed before the district would consider granting the request. To that end, Ms. Eschette requested that Plaintiff seek a second opinion from Dr. Cusco, an authorized physician acting as an agent for the district. Plaintiff did in fact consult Dr. Cusco as instructed on or about August 12, 2014 and Eschette granted Plaintiff's request for sabbatical medical leave. According to Eschette, the leave was originally for the fall semester of 2014 only. When questioned about policies regarding medical leave and her involvement, she claimed she worked in concert with the Superintendant. She suggested that based on board policy she requested the second opinion and referred plaintiff to the doctor who worked for the parish. Eschette testified that she recognized that plaintiff's doctor was a general practitioner. Contrary to her early assertions, Eschette alone made the decision to grant leave and testified that she would have only conferred with the Superintendant after the fact. She acknowledged that she alone made the decision to grant leave to Plaintiff. Eschette claims that she provided the Plaintiff with Dr. Cusco's "treatment plan". (See Ex. 1 Pg. 23. Ins. 6-7).

There was no plan of care suggested by Dr. Cusco. It was simply an assessment, acknowledging Dr. Accuri's findings that plaintiff was suffering from job related stress and should have time off from work. He did not prescribe any manner or method of treatment that plaintiff should follow. There was no protocol that he recommended and simply opined that plaintiff should not return to work until and unless she was cleared by a psychiatrist. No one was recommended to Plaintiff concerning a treatment for job related stress and no follow up treatment was ever suggested. The form completed by Dr. Cusco was merely a form prepared by

the Board for the referral and there were no other medical notes or charts prepared by the doctor to support his recommendation.  Matter of fact, the document show that light duty was recommended for plaintiff which makes no sense since she was not working at all for the district in light of her approved medical sabbatical leave.

Eschette alleges that in December of 2014 she extended the leave because she did not have a teacher to fill the position and plaintiff had made a request for an extension. (Id Page 29, lns. 1) She further alleged that she made the decision based on the fact that she did not have a psychiatric evaluation confirming that plaintiff was ready to return to work, notwithstanding Dr. Accuri's note on November 25, 2014. (Id. Page 29 lns.15) Questions remain in dispute as to the actual basis for why Eschette did not reach out to plaintiff to verify her availability to return to work. (Id. Page 31 lns. 25) Plaintiff's leave was extended through the spring of 2015 and the Defendants did not ask Dr. Cusco to render another evaluation nor did they request that plaintiff see any other physician for approval. (Id. Pg. 32 lns. 16) Plaintiff was not asked to provide any additional medical information from Dr Arcuri by the district during her medical leave. (Id. Pg. 39 lns. 14; Pg. 40 lns. 4-9). Eschette sent two letters regarding Plaintiff'S status to return to work in January of 2015 by regular mail and certified mail in Ma of 2015.  Ms. Eschette testified that the January letter was sent to all employees.  It is noteworthy that in January of 2015, Eschette was aware of Plaintiff's status since she had approved leave for the entire semester for the spring of 2015.  Eschette identified her name and return address on the certified receipt card. She acknowledged that she wrote the notes on the exhibits but did not know when it was actually written (See Eschette Ex. 8b).

Contrary to the testimony of the Superintendent, Eschette did not conduct an investigation, nor did she maintain a file, memorializing her efforts to verify plaintiff's health status prior to deciding to fire her.

Ms. Eschette testimony also contradicts that of the Defendant Spears regarding whether the principal was aware of the plaintiff's status for the academic year of 2015-2016.  Eschette testified that she discussed Plaintiff's availability for the aforementioned year with principal. That is contrary to what Spears testified to during her deposition.  Eschette's explanation of whether the principal knew of the Plaintiff's absence lacks credibility.  She appears to parse words and attempts to suggest that the principal may not have known that type of leave that Plaintiff took but was certainly aware of her absence. (Id. Pg. 56 lns 13). According to Eschette's testimony, she expected Plaintiff to seek clearance from a psychiatrist, yet one was not identified to Plaintiff for consultation. This testimony is contrary to Board policy regarding the appointment and payment for such services.   Ms. Eschette suggested that at no time during the summer of 2015, in anticipation of returning to work with the district, was she was ever made aware of Plaintiff's desire to return to work. She was unaware of Plaintiff's attempts to seek advice as to how she could satisfy the requirement to do so. At some point Eschette was informed that plaintiff was allegedly resigning from her position as teacher with the district. This mistaken belief was based on a copy of a complaint that plaintiff sent to the State Board of Education,  complaining about the evaluation that she had received during the spring of 2014. That evaluation served as the basis for much of the stress that caused Plaintiff  to seek leave. Although the letter was sent to the State Board of Education, another employee of the district forwarded the copy to deponent. (See Eschette Ex.9 *in globo)*. Under direct examination, Eschette was asked, in her official capacity as HR director, if she reached out or inquired from

Plaintiff what her intentions were related to her employability or desire to remain employed with the district. (Id. Pg 66 lns 16-22).

The aforementioned letter of complaint written by Plaintiff, was sent to the State Board of Education, not Plaintiff's employer, St. John the Baptist.  Defendant's could not have reasonably believed this was a letter of resignation since the State Board was not her employer and assuming for the sake of argument, if they thought that was the case, it defies reason and logic that no one with the district attempted to verify Plaintiff's status before jumping to such an extreme conclusion that Plaintiff's abandoned her job.  To the point of job abandonment, Eschette verified that Plaintiff never told her principal or the Superintendent of any desire to leave her position with the district.

In support of defendant's suggestion that the district tried to reach out to plaintiff to inquire about her status, they rely on an email from an employee of the district who alleges that she sent an email to plaintiff seeking clarification of her intent to return to work. (See Eschette Exhibit 10). Eschette continued to testify that the agent for the district was not a direct supervisor of plaintiff and was not employed at the Plaintiff's school.  She was allegedly the principal over preschool, head-start and served as principal over district classrooms.  Oddly enough, plaintiff was not a preschool teacher and did not teach head-start so it would make no sense to suggest that the agent; had a reason to send Plaintiff an email as her principal or in any other capacity. Plaintiff has previously denied ever receiving this email from the agent or anyone else in the district as suggested.

The district's reasoning is flawed because they suggested initially that Plaintiff abandoned her job. Second, she did not comply with a nonexistent plan of treatment and, third she failed to communicate with the district by not responding to what appeared to be nothing

more than a confusing, dated form, requesting Plaintiff to return to work. There was no formal attempt by the district to verify Plaintiff's medical status before terminating her. Eschette testified that she would not have known about Plaintiff's intention regarding returning to work until she made or had communication with Plaintiff but conceded that there was a lack of communication. (Id. Pg. 81 lns 12. During the deposition, Eschette was asked to review a document that evidenced her previous efforts to communicate with Plaintiff regarding job assignment.( See correspondence Eschette Exhibit 11) The document appears to contradict testimony of a lack of communication. By contrast, Plaintiff did not receive a similar letter for the academic year of 2015-2016 from Page Eschette.

When questioned under examination as to how Defendant Eschette came to the conclusion that plaintiff was not returning to her job for the academic year of 2015-2016 school, she gave a rambling combination of speculative reasons. (Id. Pg 87 lns 2-5) The district knew that Plaintiff was out on medical sabbatical leave for an entire year. No formal attempt was ever made to contact Plaintiff to verify her medical status and the principal previously testified under oath that she had not spoken with plaintiff regarding her leave status or her ability to return to work. When asked if the district spoke directly with Plaintiff, Eschette answered that she had not done so without further explanation. The termination letter dated August 17, 2015 to Howard was based on Plaintiff allegedly failing to report to work within 10 days of the start of the school year.( See Eschette Ex.12) A genuine question of fact remains in dispute as to when the 10 day period began. The only reference point established by Eschette was the previously identified as Exhibit 10. It is dubious to suggest that the only notice plaintiff received questioning her intent to return to work was an email that she has stated that she never received. Questions remain in dispute as to whether Page Eschette discussed the recommendation to terminate Plaintiff with the

Superintendant,  since as she put it "if it's job abandonment, it was pretty cut and dry, you know as far as a discussion, but I'm sure I let him know this teacher did not show up for the first day of school". (Id. Pg 91 lns. 21-25).

When questioned as to whether she was aware of Plaintiff's prior EEO filing in March of 2015, Page Eschette testified that she had been apprised of the filing. (Id. Pg 95 lns 14-16). Specifically, she was aware and prepared the self-serving response and provided a matrix of what she alleged as comparators.   The validity of the information remains in dispute and was never verified by the EEOC during the administrative filing by plaintiff.

At the time of recommending terminating plaintiff, Eschette was aware of the pending EEO charge filed by plaintiff and the question remains in dispute as to whether plaintiff was terminated in retaliation for filing the EEO charge.  Eschette testified that she was not sure if she discussed the termination with the Superintendant. (Id. Pg 105 lns15-18). To make matters even more confusing, Eschette was questioned about an official document disclosed in discovery which suggested that as of August 19, 2015, Plaintiff resigned from her position, rather than being fired for job abandonment. (See Payroll Status form Exhibit 15).  During her deposition, Eschette was challenged for an explanation, and she simply relied that it could have been listed in that manner due to a clerical error but had to acknowledge that she did not know that for a fact and was only speculating. ( Id. Pg.107 lns 22, Pg.108 lns.1)  Again, the question of plaintiff status of separation remains in dispute.  Defendant, Eschette could not state whether Plaintiff was fired or simply abandoned her job.

## B. PLAINTIFF'S TERMINATION VIOLATED THE AMERICANS WITH DISABILITIES ACT (ADA)

Material issues of fact exist as to whether Plaintiff's termination was contrary to the Americans with Disabilities Act (ADA) and Title VII.

In the instant case, the defendants violated the American with Disabilities Act, hereinafter referred to as the ADA, by failing to determine Plaintiff's fitness or availability to return to her tenured teaching position prior to terminating her.  The ADA provides for a mandated process to consider reasonable accommodations.  Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in an interactive process so that together they can determine what reasonable accommodations might be available.  *See E.E.O.C. v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 615 (5TH CIR. 2009) In this case, it is well established that Plaintiff submitted the appropriate medical documentation and also complied with Defendants' request to secure a second opinion and was ultimately granted a reasonable accommodation.  It is uncontroverted that during the entire academic school year of 2014-2015, Plaintiff was granted an accommodation in the form of an extended medical leave.

**DISCRIMINATORY TERMINATION**

The ADA prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. Section 12112(a).  In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden shifting analysis first articulated in *McDonnell Douglas Corp., v. Green,* 411 U.S. 792 (1973), a Title VII case. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).  This analysis first requires the employer to establish a prima facie case of discrimination.  *Chevron Phillips,* 570 F.3d at 615.  If the Plaintiff is successful, then Defendant must articulate a legitimate,

nondiscriminatory reason for terminating Ms. Howard. *See id.* Finally, the burden shifts back to the Plaintiff to show that the Defendants' proffered reason is pretextural. *See id.*

In this case, Plaintiff has met her legal burden of proving a prima facia case of discrimination. At the time of the discriminatory conduct as alleged by Plaintiff, she had a disability and she was qualified for the job she held. *Compare Zenor v. El Paso Healthcare Sys., Ltd.,* 176 F.3 847, 853 (5th Cir. 1999), with *Burch v. Coca-Cola Co.,* 119 F.3d 305, 320 (5th Cir. 1997). This Circuit also has held that the employee need only prove that she was subjected to an adverse employment decision on account of her disability. *Zenor*, 176 F.3d at 853.

To combat Plaintiff's well establish claim of a disability and subsequent discriminatory conduct, Defendants allege that Plaintiff failed to respond to correspondence that was forwarded to Plaintiff and all other employees at some point in January of 2015, requesting verification of intent to return to work for the academic year of 2015-2016. As noted earlier, Defendant Eschette testified that the January notice was sent to all employees in a bulk mailing. She further testified that no specific notice was forwarded to Plaintiff concerning her intent to work concerning the January 23, 2015 deadline. Again, at the time the January 2015 notice was sent out, Plaintiff was out on approved leave. Eschette stated that an additional notice was sent to Plaintiff at some point during the month of May 2015, again requesting whether Plaintiff intended to return to work. The notice that was allegedly provided was the same one page questionnaire that requested that the form be returned no later than January 23, 2015. Clearly, at the time the May notice was provided, the January deadline had long since passed. No other notice was sent to Plaintiff to verify her intent to return to work. The question as to Plaintiff's fitness to return to work was never addressed by Defendants, nor was any effort made to confirm whether Plaintiff was even fit to return to work.

Defendants have asserted that it was Plaintiff's duty and responsibility to contact them regarding her fitness to return to work.  This mistaken belief is based on the one-time evaluation performed by Dr. Cusco in July of 2014.  Dr. Cusco opined at that time that Plaintiff was not fit to work and should only do so after being evaluated by a psychiatrist, clearing her to work with children.  Defendants do not dispute that Cusco only saw Plaintiff on one occasion and did not schedule a follow up.  Moreover, the plan of care that Defendants rely on was not a plan at all.  It did not outline or dictate a course of treatment that Plaintiff was asked to follow.  It also did not include instructions or directions for Plaintiff to follow regarding an effort to be allowed to return to work.

It is well established according to the ADA that once an accommodation is made, the employer has an ongoing obligation to monitor the employee to verify whether there had been a change in the employee's status prior to taking any adverse action.  In the instant case, the Defendants failed to verify Plaintiff's medical status prior to terminating her.  Specifically, Eschette as the human resources director summarily determined that since she had not received the intent to return to work form from Plaintiff, she had abandoned her position as a tenured teacher.  She further testified that she also considered the lack of any updated medical information from Plaintiff contemporaneous to her decision to terminate.  This line of reasoning is mere pretext since Eschette knew as early January of 2015 that Plaintiff was out on extended medical sabbatical leave for the entire spring semester of that year.  Also, in March of 2015, Plaintiff filed a charge of discrimination with the EEOC alleging discrimination, retaliation and violation of the ADA.  Defendant Eschette responded to the EEOC charge of discrimination filed by Plaintiff and provided the official statement on behalf of the district.  The Defendants have no proof that Plaintiff abandoned her job while out on extended medical leave.

Plaintiff has established a prima facie case that the Defendants had no legitimate reason for terminating her.   Prior to sending Plaintiff her notice of termination, Defendants were aware of an EEO complaint that had been filed alleging discrimination, retaliation and violations of the ADA.  Defendants placed Plaintiff in the ultimate "catch-22" position prior to terminating her in violation of Title VII and the ADA.  On August 12, 2014, Defendants granted Plaintiff a reasonable accommodation by approving her request for extended medical leave.  As stated above, leave was only approved once Defendants' agent substantiated Plaintiff's treating physicians' recommendation.

Plaintiff was terminated by Defendants while out on extended medical leave.  Defendants specifically allege that prior to the start of the academic year of 2015-2016 Plaintiff failed to inform the district of her intent to return to work.  This line of reasoning is disingenuous since the district was well aware of Plaintiff's medical status.  Defendant's suggestion that Plaintiff failed to follow a "plan of care" is also a mere smoke screen for Defendants' discriminatory conduct.  No plan was ever offered to Plaintiff and she could not have complied with the alleged requirement even if she tried.  Evidence of this fact can be found by a closer examination of the actual policy regarding the granting of leave and the requirements to return to work.  The school district policy requires an employee out on leave to seek the approval from a physician approved of and paid by the district.   Moreover, a question remains in dispute as to whether Plaintiff was actually terminated because she filed an EEO complaint in March of 2015.  This is a more plausible reason for Defendants' actions.  The district was aware of the filing and the defendant who made the decision without verifying Plaintiff's medical status was the same person who prepared the response to the EEO complaint.  That person was Ms. Page Eschette.  Defendant Eschette verified that she did not comply with the ADA regulations when she failed to determine

whether additional accommodations were necessary in light of being previously informed of Plaintiff's disabilities. It is more reasonable to assume that Plaintiff was fired as a means of retaliation rather than job abandonment. To add insult to injury, Defendant Eschette also suggests that Plaintiff abandoned her tenured position, notwithstanding being out on extended medical leave for no clear reason. Defendant's reasons for terminating Plaintiff are pretextual and constitutes a violation of the ADA.

## IV.    CONCLUSION

For the foregoing reasons, as well as the information provided in Plaintiff's previously submitted Memorandum in Opposition to Defendants' Motion for Summary Judgment, the relief sought pursuant to Federal Rule 56 should be denied.

The evidence more than establishes a *prima facie* case of discrimination, retaliation and a violation of the Americans with Disability Act as to all of the allegations raised by Plaintiff. The additional testimony offered by defendant Eschette further establishes the animus of the Defendants in meting out requirements for medical leave contrary to board policies, overwhelmingly demonstrates the disparate treatment of the Plaintiff as an African American employee, and her White comparators. Like George and Spears, Eschette also failed to articulate a non-discriminatory reason that justifies the termination of Joann Howard. Ms. Howard was the victim of retaliation resulting in termination in violation of Title VII and the ADA. For the reason set forth fully in the accompanying memorandum and supporting documents and exhibits filed herewith, there are genuine issues of material facts sufficient to deny Defendants the entry of a judgment. Plaintiff prays that the Defendants' Motion for Summary Judgment be denied, and the court issue a finding that the Defendants have violated Title VII and the Americans with Disability Act.

Respectfully submitted;

*/S/Clarence Roby, JR.*
CLARENCE ROBY, JR.
3701 Canal Street. Ste U
New Orleans, LA 70119
504-486-7700

CERTIFICATE SERVICE

I hereby certify that a copy of the foregoing was served upon all parties who are

registered with the CM/ECF system for the United States District Court, Eastern District of

Louisiana on this 30th day October, 2018.

*CLARENCE ROBY, JR.*