# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOANN HOWARD | CIVIL ACTION |
| VERSUS | NO. 17-7142 |
| ST. JOHN THE BAPTIST PUBLIC SCHOOL DISTRICT, ET AL. | SECTION "E" (3) |

## ORDER

On October 17, 2018, the Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. #24] came on for oral hearing before the undersigned. Present were Clarence Roby on behalf of plaintiff and Kevin Klibert on behalf of defendants. After the oral hearing, the Court took the motion under advisement. Because the parties had scheduled the deposition of Page Eschette – a crucial eyewitness as will be outlined below – on October 23, 2018, the Court ordered plaintiff to file a supplemental memorandum after Eschette's deposition. The Court also allowed defendants to renew any summary judgment motion after the deposition. The parties have now done so, and defendant's Amended Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. #32] is also now before the Court. Having reviewed the pleadings and the case law, the Court rules as follows.

## I.   Background

The St. John the Baptist School Board ("defendant" or "the School Board") hired plaintiff Joann Howard, an African-American female, in November of 2007 as a second grade teacher. [Doc. #24-4 at pp. 8, 15]. Immediately before she returned to Louisiana, plaintiff was employed by the Department of Defense as a victims' advocate, working with military families, victims of sexual assault, and domestic violence. [*Id.* at pp. 12-13].

On or about July 23, 2014, plaintiff provided the School Board with a physician's statement that diagnosed her with "major depressive illness and anxiety disorders." [Doc. #24-5]. As a result of this diagnosis, her treating physician opined that "she is incapacitated by stress and depression" and was thus unable to perform the duties of her profession for 180 days. [*Id.*]. On July 28, 2014, after receiving plaintiff's request for leave, Page Eschette, defendant in her official capacity and the Director of Human Resources at the time, advised plaintiff that under the School Board's sick leave policy, employees could be required to obtain a second medical opinion with a doctor of the School Board's choice. [Doc. #24-6]. Pursuant to that authority, the School Board asked plaintiff to make an appointment with Dr. Jose Cusco. [*Id.*]. Plaintiff maintains that requiring her to undergo this second medical opinion was the first instance of racial discrimination against her by the School Board. [Doc. #24-4 at p. 18].

Cusco examined plaintiff and found that she was "unable to function as a teacher due to emotional/ability" and recommended that she undergo a "formal psychiatric exam prior to resum[ing] teaching duties." [Doc. #24-7]. As a result of Cusco's medical opinion, Page Eschette, on behalf of Superintendent Kevin George, approved plaintiff's medical sabbatical leave for the Fall 2014 semester. [Doc. #24-8]. Included in the approval was a statement of School Board's policy that "any employee taking sabbatical leave who fails to return to service in this School District upon expiration of the leave as specified above for any reason other than incapacitating illness as certified by two physicians, shall forfeit all salary compensation received during the leave period." [*Id.*].

On December 1, 2014, the School Board extended plaintiff's medical sabbatical to the Spring 2015 semester, and it mailed her another letter in which it detailed the School Board medical sabbatical policy and asked that she follow Cusco's recommendation with respect to obtaining a psychiatric examination prior to returning to work. [Doc. #24-9]. On May 20, 2015, the School Board sent via certified mail an intent to return to work form, which she received the same day. [Doc. #24-10]. Plaintiff testified at her deposition that she did not undergo a psychiatric examination as Cusco suggested at any time between August 2014 and July 2015, nor did she ask her treating physician for a referral for a psychiatrist. [Doc. #24-4 at pp. 40, 42, 45]. Plaintiff also testified at her deposition that it was her belief that she was required to obtain a psychiatric evaluation by Cusco, though no such condition is contained in Cusco's August 12, 2014 recommendation. [Doc. #24-7].

On June 17, 2015, plaintiff sent an email to the Louisiana Department of Education Accountability Commission Members that she signed "Joann Howard, (Teacher leaving the profession)." [Doc. #24-11; *see also* Doc. #24-4 at p. 57]. After hearing nothing from plaintiff, including neither her intent to return by filling out the appropriate form nor a psychiatric evaluation medically clearing her to return to duty, the principal at the school to which she was assigned sent her an email asking about her intent to return to work, to which no response was received. [Doc. #24-12]. After plaintiff ultimately failed to report to work or otherwise respond to requests for information, the School Board terminated her pursuant to School Board policy that allows for termination when an employee is absent for ten (10) days without communicating with the School Board. [Doc. #24-13].

Plaintiff then sued defendants under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the Americans with Disabilities Act ("ADA").

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences

are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### B. The Motion for Summary Judgment

In *McDonnell Douglas Corp.*, the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Under this evidentiary framework, the plaintiff must first establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

To establish a prima facie case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated employee who was not a member of her protected class. *Montgomery-Smith v. Louisiana Dep't of Health & Hosps.*, No. Civ. A. 08-4737, 2011 WL 3653533, at *3 (E.D. La. Aug. 18, 2011) (citing *McDonnell Douglas*, 411 U.S. 792, 801 (1973)). And to establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008). A plaintiff who is unable to show a prima facie case cannot survive

a summary judgment challenge. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 429 (5th Cir. 2000).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the conduct. *Reeves*, 530 U.S. at 142. This burden is one of production, not persuasion, and involves no credibility assessment. *Id.* If the defendant meets the burden, the presumption raised by the plaintiff's prima facie case disappears. *Id.* Once the employer produces sufficient evidence to support a nondiscriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation and citation omitted). As to retaliation, the plaintiff must demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

Plaintiff alleges that the School Board first discriminated against her when it required that she undergo a second medical opinion after she requested a medical sabbatical based on anxiety and stress. [Doc. #24-4 at p. 7]. In response to this argument, the School Board provides the Court statistical data that illustrates when the School Board has required a second medical opinion in response to an employee requesting extended sick leave or medical sabbaticals. [Doc. #24-14]. The list consists of 80 employees who requested extended medical leave and/or a medical sabbatical under the same school administration as that under which plaintiff worked. The Court's review of this data demonstrates no disparate treatment on the basis of the race or sex of any employee and instead reveals only one discernable pattern. That is, in situations when an employee

sought extended medical leave or a medical sabbatical for mental anguish or psychiatric problems, the School Board has consistently asked the employee to submit to a second medical opinion irrespective of race or sex. This evidence is unrebutted and ignored by plaintiff. For these reasons, the Court finds that plaintiff is unable to demonstrate that she received disparate treatment for any reason. Moreover, plaintiff was ultimately granted the medical sabbatical that she sought. Thus, she cannot claim an adverse employment action. [Doc. #24-4 at p. 8]. There are no genuine issues of material fact, and defendants are entitled to summary judgment on this claim.

As to her second instance of racial discrimination, plaintiff claims that the School Board discriminated against her when it required that she undergo a second medical evaluation with Cusco. In support of this claim, plaintiff provides no evidence other than the fact that it was a requirement for her return to work. Plaintiff maintains that she was unable to fulfill this requirement because Cusco had not provided her with a referral to a psychiatrist. She also argues that she was required to obtain "clearance" from Cusco, but Cusco's approval of her medical sabbatical contains no requirement or indication that Cusco required clearance. [Doc. #24-7]. All Cusco's form states is that plaintiff is medically cleared for light duty and "no working with children" from August 12, 2014 until "cleared by psychiatrist." [*Id.*]. Plaintiff has submitted no evidence to demonstrate that this requirement was placed on her return for racially discriminatory reasons and for that reason, the Court finds that she cannot meet her burden of establishing a prima facie case. [Doc. #24-4 at p. 16].

Plaintiff next alleges that a teacher evaluation completed by Kendria Spears, principal at Fifth Ward Elementary where plaintiff was employed, is evidence of retaliation. [Doc. #24-4 at p.

17]. Plaintiff's evaluations, however, all rated her at or above "Effective: Proficient" or "Highly Effective." [Doc. #24-15, 16]. It is thus inexplicable how this could be considered retaliation. Essentially, plaintiff alleges that she was given a positive review and somehow this was the result of retaliation. At her deposition, however, she admitted that this "alleged" retaliation was not based on racial discrimination. [Doc. #24-4 at p. 18].

The School Board cites this Court to a specific exchange that occurred at plaintiff's deposition about a co-worker:

> Q: Is it your testimony that you believe Quentina Timoll discriminated against you on the basis of race, and let leave it at that?
> A: Yes.
> Q: Okay. Has Ms. Tamol [sic] ever made any statements to you that were discriminatory on a racial basis?
> A: No.
> Q: So, you're basically saying this solely on the fact that [another teacher] complained about her compass evaluation and got a different result than from you did?
> A: Yes.
> Q: You have no other evidence besides that gut feeling that that's the reason why, that it's racial discrimination?
> A: Yes.

[Doc. #24-4 at p. 19].

Plaintiff thus admits that her belief that her COMPASS evaluation was somehow discriminatory or retaliatory is based solely on hearsay from another teacher and her own gut feeling. That plaintiff's evaluation is not negative and did not result in an adverse employment action reveals her inability to meet her burden of proving a prima facie case of discrimination and/or retaliation. There is thus no genuine issue of material fact, and defendants are entitled to summary judgment here.

Additional testimony from plaintiff's deposition that supports a finding that she cannot establish a prima facie case for discrimination or retaliation is her testimony about her failure to return to work after her medical sabbatical ended. Plaintiff admits that she received the letter from Page Eschette in which the return-to-work requirements after taking a medical sabbatical are outlined. [Doc. #24-4 at pp. 13-14; *see also* Doc. ## 24-8, 24-9]. Those requirements included a return to work for a full two semesters after her medical sabbatical. [*Id.*]. Indeed, she did not return to work for two full semesters as is required by School Board policy. Further demonstrating a lack of retaliation is her testimony that the School Board did not attempt to seek repayment for the two semesters of pay she received while she was on medical sabbatical for this failure, as is their right under School Board policy. [Doc. #24-4 at p. 14].

Plaintiff contends that the School Board has submitted no competent evidence to support any of the requirements outlined above. To rebut the School Board's evidence that she never received any document that outlined her requirements to return to work, plaintiff cites her own self-serving affidavit [Doc. #26-3], numerous letters between her and the School Board, e-mails to an unknown person, "Patricia Triche,"[1] and certified mail receipts – all signed by plaintiff. [*See, e.g.,* Doc. #26-2]. The signatures on the receipts – again, all signed by plaintiff – belies plaintiff's argument that she never received the mail sent by Eschette. Moreover, she received correspondence from Eschette by both letter and e-mail.

And with regard to the other arguments raised by the School Board, plaintiff only complains that she has not yet taken the discovery of Eschette. On November 7, 2017, this Court

---

[1] It later appears that Triche was (or is) the principal of the school at which plaintiff worked.

originally set the discovery deadline on February 26, 2018. [Doc. #9]. On February 22, 2018, the parties moved for a continuance of that deadline, [Doc. #10], and this Court granted the motion, extending the discovery deadline until March 30, 2018. [Doc. #12]. On April 23, 2018, this Court continued the pre-trial conference and trial but refused to extend the discovery deadline until either party demonstrated good cause. [Doc. #15]. On August 28, 2018, this Court again continued the pre-trial conference because the parties had filed no proposed pre-trial order. [Doc. #18]. The Court did not extend the discovery deadline, and no party asked it to do so. This Court held the pre-trial conference on September 6, 2018, striking the proposed pre-trial order, continuing the pre-trial and trial dates, and ordered defendants to file a motion for summary judgment no later than September 27, 2018. [Doc. #22].

      This Court finds that plaintiff has had adequate time to conduct the discovery necessary to mount her case. Eschette no longer works for the School Board, and she is thus out of the School Board's control. That plaintiff has not found Eschette and subpoenaed her in the amount of time since this Court entered its first pre-trial order is not good cause to delay ruling on this motion for summary judgment. *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("Additionally, the non-movant [of a motion for summary judgment] must diligently pursue relevant discovery – the trial court need not aid non-movants who have occasioned their own predicament through sloth."). This argument fails.[2]

---

[2] This argument is also now moot as outlined below.

### C. Plaintiff's Supplemental Memorandum

After the oral hearing on defendant's motion, the Court allowed both parties to supplement their pleadings, which both have done. With regard to her Title VII claims, plaintiff's arguments in her supplemental memorandum revolve around the existence of allegedly genuine issues of material fact. The Court addresses each one seriatim.

Plaintiff again contends that after Cusco recommended that she not return to work absent a follow-up psychiatric examination, no one – including the School Board – recommended a plan of action for her. Plaintiff complains that Cusco provided her with no protocol to obtain a psychiatric examination before returning to work.

This argument is a red herring. First, Cusco is a treating physician with no ties to the School Board apart from its use of him for evaluations when an employee injures himself on the job. Plaintiff submits no evidence that the requirement that Cusco imposed – the follow-up examination – was ordered or even suggested by the School Board. Whether Cusco's actions may be imputed to the School Board is a legal issue that plaintiff has failed to brief and for which she has failed to provide any evidence. Moreover, plaintiff admitted that she was treating with a Dr. Arcuri at the time, who had also referred her to a psychologist, Dr. Judy Petit. [Doc. #24-4 at p. 42]. Plaintiff also admitted that she failed to ask Arcuri to refer her to a psychiatrist for an evaluation even though she was treating with him at the time. [*Id.*]. Plaintiff further testified that she thought that the referral had to come from Cusco, [*id.* at p. 43], but a plain reading of Cusco's report belies any reading that would require him to be the one required to suggest the referral. The bottom line here is that the School Board did not terminate plaintiff for failure to attend a follow-

up psychiatric evaluation. The School Board terminated her because she failed to report back to work when required to do so. [Doc #24-13]. There is no genuine issue of material fact here.

Plaintiff also again complains that there is a genuine issue of fact as to whether Eschette ever reached out to her to determine her availability to return to work. This argument is yet again specious. As noted above, plaintiff's signatures on the return receipt – of Eschette's "Notice of Intent to Return" letter and attached form – belies her argument that she never received the mail sent by Eschette. [Doc. #24-9 & 24-10]. Moreover, she received correspondence from Eschette by both letter and e-mail. In tandem with this argument, plaintiff argues that she never received an intent-to-return-to-work form for the academic year 2015-2016. This argument is belied by the intent-to-return-to-work form for the years 2015-2016 and the plaintiff's signed return receipt that she had received it. [Doc. #24-9].

Plaintiff also contends that there is a genuine issue of material fact as to when the ten-day period – after which she would be terminated for failure to communicate with the School Board about her intent to return to work – began to run. This is yet another spurious argument. The intent-to-return-to-work form – for which plaintiff signed a return receipt – clearly requires that the form be returned by January 23, 2015 to demonstrate plaintiff's intent to return to work in August 2015. [Doc. #24-9]. This was not done. Moreover, plaintiff signaled her own intent *not* to return to work in a letter to the "LDOE Accountability Commission committee Members" dated June 17, 2015 by signing "Joann Howard, (Teacher leaving the Profession)." [Doc. #24-11]. In addition, Patricia Triche, the principal, e-mailed plaintiff on August 6, 2015 to determine her intent to work and to find out why plaintiff had not returned to work on August 5, 2015. [Doc. #24-12].

The School Board terminated plaintiff as of August 18, 2015, a full 13 days after she first failed to return to work. [Doc. #24-13]. There is no merit to this argument.

In a side argument, plaintiff maintains that she filed a grievance with the School Board. There is no evidence to support this factual allegation, and the School Board's evidence rebuts it. The affidavit of Kevin George, superintendent and the person responsible for handling all grievances within the School Board, attests that he never received one from plaintiff. [Doc. #32-2 at ¶ 2].

Plaintiff also resuscitates her argument that the School Board discriminated against her when it required her to attend a follow-up psychiatric examination but did not require the same for other non-African-Americans. This argument has been adequately addressed. *See infra* at p. 7.

Lastly, the Court notes that the issue of the deposition of Eschette has been resolved. Before she filed her supplemental memorandum, plaintiff had the opportunity to depose Eschette. Any argument to the contrary is thus now moot.

This dispute can be reduced to the following observation: Plaintiff eschews all responsibility for her failure to take any action to return to work for the academic year 2015-2016. Plaintiff attempts to pass the blame on to others for her own failure to follow the conditions of her return. Title VII does not compensate plaintiffs who fail to take steps to maintain their employment. Neither did Congress create Title VII to place the burden on employers to accommodate a plaintiff who fails, for example, to fill out a simple form to indicate her intent to return to work. As all indications were there in the letter signaling her intent not to return to work [Doc. #24-11], plaintiff's own failure to follow up on her duties is glaringly fatal to her claims.

13

**D.     The ADA**

Plaintiff also alleges that her termination violated the ADA.  The School Board maintains that plaintiff cannot establish a prima facie case of discrimination under the ADA.

The ADA prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a).  "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Equal Emp't Opportunity Comm'n v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). If plaintiff is able to prove her prima facie case of discrimination under the ADA, then the burden shifts to the School Board to "articulate a legitimate, nondiscriminatory reason for terminating" plaintiff. *Mitchell v. Universal Health Servs., Inc.*, No. Civ. A. 15-5963, 2017 WL 993146, at *1 (E.D. La. Mar. 15, 2017) (citing *id.* at 694). Finally, if defendant meets its burden, the burden shifts back to plaintiff to prove that defendant's non-discriminatory reason for termination is pretextual. *Id.*

Defendant contends that plaintiff cannot establish a prima facie case of discrimination because she cannot demonstrate that she was qualified for the position.  To avoid summary judgment on this claim, plaintiff must show that either (1) she could "perform the essential functions of the job in spite of [her] disability," or, if she could not, (2) that "a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam) (citing the ADA, 42 U.S.C. §

12111(8), which defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position ...")).

First, the Court outright rejects any accommodation argument given that plaintiff never sought one. That is undisputed. As to whether she is qualified to perform the essential functions of her job, plaintiff's evidence amounts to the following: "At the time of the discriminatory conduct as alleged by Plaintiff, she had a disability and she was qualified for the job she held." [Doc. #30-1 at p. 10]. That is not evidence but a conclusory legal opinion that this Court is not bound to accept. *Calbillo*, 288 F.3d at 725. And if there were evidence that she is qualified for the position, plaintiff has failed to cite such evidence to this Court. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

Plaintiff admits that she did not comply wih Cusco's recommendation and failed to schedule or receive a follow-up examination. [Doc. #24-4 at pp. 10-11]. That alone demonstrates that she was not qualified for the position. Moreover, and as highlighted in all the evidence cited above, plaintiff's inability to fail to follow through with the requirements for her return to work – *i.e.*, schedule a follow-up psychiatric examination, fill out a simple intent-to-return-to-work form – renders her qualifications for the job highly debatable. In addition, even were plaintiff able to demonstrate that she was qualified for the position, the insurmountable evidence reveals that she was not terminated because she was not qualified but because she failed to return to work without

communicating with the appropriate people in the School Board. Simply put, plaintiff cannot demonstrate a prima facie case under the ADA. These claims must fail as well.

### III. Conclusion

Congress never intended Title VII or the ADA to be a panacea that allows parties allegedly aggrieved in their workplace to don their Sunday best and hightail it to a federal courthouse shouting the talismanic phrases "discrimination," "retaliation," "sex," "gender," "race," "national origin," "age," or "disability." Title VII was passed to protect aggrieved persons from actual and legitimate discriminatory conduct in the workplace, not to protect the lackadaisical nature of those who fail to perform the responsibilities required of them at their workplace. It is clear from the record and the evidence before it now that the School Board terminated plaintiff for her own failure to follow up on her responsibilities to return to work. Plaintiff's failure to perform these duties rests squarely on her shoulders, and her shoulders alone. Title VII should never have been invoked here.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. #24] and the Amended Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. #32] are GRANTED.

New Orleans, this 7th day of November, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**